# In the United States Court of Federal Claims

No. 15-478V

Filed: January 27, 2020

Reissued for Public Availability: February 25, 2020*

---

**ADINA SMALL,** *pro se,*

      *Petitioner,*

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,**

      *Respondent.*

Keywords: Vaccine Act; Motion for Review; SIRVA; Off-table; Actual Causation; Injection; Influenza (flu); Nerve Injury; Expert; Medical Records; Ruling on the Written Record

---

*Adina Small*, the petitioner, acting *pro se.*

*Lynn C. Schlie*, Torts Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for the respondent.

## MEMORANDUM OPINION AND ORDER

**HERTLING, Judge**

    Ten months after receiving an injection with the influenza (flu) vaccine in her left arm, the petitioner, Adina Small, told her doctor for the first time that she had been unable to lift that arm since receiving the injection. Her doctor referred her to a neurologist, who inferred that the flu shot had damaged a nerve in Ms. Small's arm, immediately causing shoulder pain that gradually caused Ms. Small's inability to lift her arm. Ms. Small then sought compensation for the vaccine-related injury under the Vaccine Act, 42 U.S.C. § 300aa-10 *et seq.* The special master denied Vaccine Act compensation for Ms. Small's alleged injury, holding that she failed to prove that the flu shot caused her injury. *Small v. Sec'y of Health & Human Servs.*, No. 15-478V, slip op. at 21-22 (Fed. Cl. Spec. Mstr. Nov. 1, 2019) [hereinafter *Decision*], https://www.uscfc.uscourts.gov/opinion-search, *reissued for publication*, 2019 WL 6463985 (Dec. 2, 2019).

    The special master found insufficient evidence of the onset of pain immediately following the flu shot that the neurologist's theory of causation inferred. The special master

---

* Pursuant to Vaccine Rule 18(b), this opinion was initially filed on January 27, 2020, and the parties were afforded 14 days to propose redactions. The parties did not propose any redactions. Accordingly, this opinion is reissued in its original form for posting on the court's website.

found instead that left-shoulder pain reported the day after Ms. Small's flu shot was more likely caused by the pre-existing spinal condition that had previously caused pain in both of Ms. Small's upper arms. The special master also found that the absence of any mention of injection-related pain in the records of three doctor visits spanning the six months following the flu shot was preponderant evidence that Ms. Small did not experience the direct-nerve-injury pain that her neurologist's theory inferred.

Ms. Small has sought review of the special master's decision. The special master applied the correct legal standard for proof of vaccine causation under *Althen v. Sec'y of Health and Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005). The special master considered the relevant evidence in the record, including Ms. Small's medical records, affidavits, and expert reports. The special master provided a reasonable explanation for his conclusions, including his conclusion that the immediate nerve damage posited by Ms. Small's neurologist nearly a year after the vaccine was not supported by preponderant evidence in light of her contemporaneous medical records.

After independent review of the record, the Court DENIES the motion for review.

## I. BACKGROUND

### A. Pre-Vaccination Spinal Condition

About a month before receiving her flu shot in 2013, Ms. Small saw a rheumatologist and reported a one-year history of "neck pain right," a feeling of "ants on [her] body," and "swelling of [her] right posterior trunk." (Ex. 13 at 1.) The rheumatologist recommended an x-ray and MRI of Ms. Small's cervical spine.

The record of an MRI taken a week later, four weeks before the flu shot, set forth the "Impression," "Clinical Information," "Technique," and "Findings" of the radiologist, Dr. Jerrold Mink. Dr. Mink recorded Ms. Small's "Clinical Information" as "[r]ecurring neck pain radiating to both upper extremities for many years." He found "the presence of developmental cervical spinal stenosis," and he specifically described the appearance of the joint between each of the cervical vertebrae. (*Id.* at 4-5.)

Two weeks before the flu shot, Ms. Small returned to the rheumatologist, who reviewed her MRI with her. The rheumatologist added cervical spinal stenosis and two abbreviations indicating that Ms. Small had right lower-back pain to the "Assessment" section of Ms. Small's record.[1] (*Id.* at 8.) Ms. Small also reported right shoulder and right lower-back pain. (*Id.*)

Ms. Small returned to the rheumatologist on the same day she received her flu shot, but the sequence of these two events is unclear from the record. (*Id.* at 16-17.) Ms. Small reported

---

[1] The special master's decision clarified that the abbreviations in "right sh and right LBP" are common abbreviations for "shoulder" and "low back pain" respectively. *See Decision* at 6 (citing N.M. Davis, Medical Abbreviations 186, 297 (15th ed. 2011)).

2

"continued neck pain with stiffness" to the rheumatologist. (*Id.* at 16.) The rheumatologist's physical exam confirmed a "decreased [range of motion]" in Ms. Small's neck. (*Id.* at 16.) Ms. Small declined an injection for the neck pain and the rheumatologist provided a muscle relaxant and recommended physical therapy. (*Id.* at 17.)

On February 12, 2013, a pharmacy worker administered the flu vaccine to Ms. Small through an intramuscular injection in Ms. Small's left arm. (Ex. 1 at 2.) The pharmacy worker also administered the shingles vaccine subcutaneously. Ms. Small does not claim that the subcutaneous injection of the shingles vaccine caused her alleged injury.

### B.   Post-Vaccination Care

The day after the flu shot, a physical therapist evaluated Ms. Small. (Ex. 5 at 16-18.) The physical therapist recorded Ms. Small's chief complaint as "severe pain [cervical spine and] upper trapezius muscles and [lower back] pain." (*Id.* at 16.) Ms. Small told the physical therapist that her neck pain came from a strain she had suffered lifting her husband, who suffered from Parkinson's disease. (*Id.*) A list of four problems on the evaluation record included "L upper extremity radicular pain." (*Id.*)

Eight days after the flu shot, Ms. Small met with her primary-care doctor and discussed abdominal pain she had reported to him eight months earlier, in June 2012.[2] She also reported "back pain." (Ex. 2 at 13-16.) Nothing in the record of this visit mentions shoulder pain or any other adverse effect attributed to the flu shot. (Ex. 2 at 13-16.)

For two months following the flu shot, Ms. Small continued physical therapy to improve her neck's range of motion. (Ex. 5 at 10-16.) The handwritten records of these sessions are difficult to read, but they do not appear to mention injection-related pain. (*Id.*)

Six months after the flu shot, Ms. Small returned to her primary-care doctor and discussed the stress caused by her husband's condition and the fact that she had suffered a viral infection a few weeks previously. (Ex. 2 at 9.) The record of the visit does not mention shoulder pain. (*Id.*)

Ten months after the shot, Ms. Small returned to her primary-care doctor and for the first time reported that she had been unable to lift her arm since receiving her flu shot. (*Id.* at 5-8.) The doctor recorded that Ms. Small "[g]ot two vaccines at Ride-Aid last February and can't raise her arm since." (*Id.* at 5.) He referred Ms. Small to a neurologist. (*Id.* at 8.)

---

[2] The special master characterized Dr. Yaron Elad, a cardiologist, as Ms. Small's primary-care doctor because records of Ms. Small's visits to Dr. Elad showed a pattern of visits for symptoms unrelated to his specialty, and Ms. Small identified him as such in her affidavit. *See Decision* at 5 & n.8. The Court accepts this inference as plausible and refers to Dr. Elad accordingly.

3

About a month and a half later, Ms. Small saw a neurologist, Dr. Nicholas Szumski, as recommended by her primary-care doctor. At her initial meeting with Dr. Szumski, Ms. Small reported:

> -- About a year ago, [she] got her flu and shingles va[ccinations] in L[eft] shoulder at the same time and spot.
>
> -- [She] [i]mmediately had pain radiating down lateral upper arm, which she thought was normal at the time.
>
> -- [The pain] [h]asn't changed in the year since, maintaining an ovoid. Advil helps somewhat, but [she] doesn't use it too often – [she] just avoids tasks."

(*Id.* at 2.)

Dr. Szumski observed that Ms. Small's arm was tender to the touch with the "greatest focus" on the outside of the upper arm where it meets the shoulder muscle (deltoid). (*Id.* at 3.) She also experienced pain when moving it away from her body. (*Id.*) The neurologist diagnosed Ms. Small with "neuritis" and recommended physical therapy. (*Id.*)

### C. Vaccine-Compensation Claim

Two years and three months after the flu shot, Ms. Small filed a petition for compensation under the Vaccine Act. The petition alleged that the flu shot caused a shoulder injury related to vaccine administration or SIRVA, which refers to a class of injuries that the Secretary of Health and Human Services has recognized by inclusion in the Vaccine Injury Table as possibly caused by intramuscular vaccine injections administered in the upper arm. *See* 42 C.F.R. §100.3(c)(10). The Secretary's inclusion of SIRVA in the Vaccine Injury Table entitles petitioners alleging a SIRVA to a presumption that their flu shot caused their SIRVA, as long as petitioners can prove the onset of the listed symptoms within the listed period. *See Whitecotton by Whitecotton v. Sec'y of Health & Human Servs.*, 81 F.3d 1099, 1102 (Fed. Cir. 1996) ("If petitioner can make such a showing, causation is presumed and petitioner is deemed to have made out a *prima facie* case of entitlement to compensation under the Act.").

The chief special master preliminarily assessed the case, and the Secretary decided to defend against Ms. Small's petition. The chief special master then reassigned the case to Special Master Millman.

Special Master Millman concluded that Ms. Small's injury was not a musculo-skeletal SIRVA-type injury. Treating the injury as neurological, Special Master Millman recommended that Ms. Small provide an opinion by a neurology expert. Ms. Small filed two expert reports from her treating neurologist concluding that the flu shot injured a nerve in her arm; the resulting pain caused her not to use her arm; and the disuse caused a reduced range of motion or "frozen shoulder." (*See* Ex. 18; Ex. 19.) The Secretary filed a responsive expert report concluding that Ms. Small's symptoms were inconsistent with the neurologist's conclusion that an earlier direct-nerve injury was the likely cause of her later inability to raise her arm. (Ex. A.) The Secretary's

expert found that Ms. Small's allegedly injection-related symptoms were the "same" symptoms that could be caused by her preexisting spinal condition. (*Id.*) Ms. Small's neurologist responded to the Secretary's expert in a third report (Ex. 20), and the Secretary's expert responded to that response (Ex. C).

The parties reported difficulty agreeing on a hearing date. After Special Master Millman retired, the case was reassigned to Special Master Horner, who decided to resolve the case without holding a hearing, citing the parties' inability to agree on a hearing date.[3] (Order, June 24, 2019.) After full briefing from both sides, Special Master Horner issued a decision denying compensation to Ms. Small.

After the special master issued his decision, Ms. Small submitted a letter informing the special master that she would proceed *pro se* and requesting more time to prepare a motion for review of the special master's decision. The special master's staff confirmed with Ms. Small's counsel that he intended to withdraw from representing her. The special master then directed that Ms. Small's letter be filed as a motion for review (Order, Nov. 26, 2019), and the case was assigned to this judge for review of the special master's decision.

The document that the special master directed the clerk to file as Ms. Small's motion for review included no memorandum of objections, so the Court considered Ms. Small's earlier-filed Brief in Support of Vaccine Causation (filed July 24, 2019) as her arguments on review.[4] (*See* Order, Dec. 9, 2019.) Accordingly, the Court reviewed the special master's conclusions that were adverse to Ms. Small, the support for those conclusions in the record, the briefing submitted before the special master by Ms. Small, and Ms. Small's medical records for relevant evidence that was not considered by the special master.

---

[3] Procedure in vaccine-injury compensation claims is governed by the Vaccine Rules, Appendix B of the Rules of the Court of Federal Claims. Under Vaccine Rule 8(d) and 3(b)(2), a special master has the discretion to decide a case without holding an evidentiary hearing as long as she finds that the record was "comprehensive and fully developed before ruling on the record." *Kreizenbeck v. Sec'y of Health & Human Servs.*, 945 F.3d 1362, 1366 (Fed. Cir. 2020). The special master specifically found that Ms. Small "had a full and fair opportunity to present Dr. Szumski's opinions by filing three expert reports that clearly explain the basis for [Dr. Szumski's] opinion." *Decision* at 4. That finding satisfies this requirement. The special master's decision not to hold an evidentiary hearing was not an abuse of discretion.

[4] The Court reasoned that allowing Ms. Small to supplement her motion for review with an entirely new memorandum of objections after the 30-day deadline to file a motion for review had passed would effectively extend the time to file a motion for review, contravening the Vaccine Rule 23(b)'s prohibition on extensions of time. (Order, Dec. 9, 2019 (citing *Widdoss v. Sec'y of Dep't of Health & Human Servs.*, 989 F.2d 1170, 1178 (Fed. Cir. 1993).)

## II. STANDARD OF REVIEW

Under the Vaccine Act, this Court reviews a special master's decision only to determine if it is "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Althen*, 418 F.3d at 1277 (quoting 42 U.S.C. § 300aa–12(e)(2)(B)). More specifically, the Court considers a special master's interpretation of statutes and other legal rules anew, without deference to the special master. *Hines on Behalf of Sevier v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 1518, 1528 (Fed. Cir. 1991). The Court defers, however, to the special master's factual findings as long as the special master has (1) "considered the relevant evidence of record," (2) "drawn plausible inferences," and (3) "articulated a rational basis for the decision."[5] *Id.*

Under the arbitrary and capricious standard, the Court does not "reweigh" or re-evaluate the evidence. *Porter v. Sec'y of Health & Human Servs.*, 663 F.3d 1242, 1249 (Fed. Cir. 2011). The Court does not re-examine the probative value of the evidence or a witness's credibility. *Id.*

## III. DISCUSSION

In order for a claimant to recover compensation under the Vaccine Act, a vaccine must be the substantial cause of the claimant's injury. For vaccines and injuries listed together in the Secretary of Health and Human Services' Vaccine Table, the Vaccine Act presumes causation upon proof of the injury's onset within the listed time period after receiving the vaccine. Ms. Small did not allege a "table injury,"[6] so she needed to prove that the flu vaccine was more likely

---

[5] "The abuse of discretion standard is "ordinarily used where the [decisionmaker] had a finite range of discretion (*e.g.* to select a penalty, or to award a specific sum as damages, from within a range of permissible alternatives)." *Hines on Behalf of Sevier v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 1518, 1527 (Fed. Cir. 1991). This standard "will rarely come into play except where the special master excludes evidence." *Munn v. Sec'y of Dep't of Health & Human Servs.*, 970 F.2d 863, 870 (Fed. Cir. 1992); *Isaac v. Sec'y of the Dep't of Health & Human Servs.*, 108 Fed. Cl. 743, 768 (rejecting petitioner's assertion that a special master's factual finding could have been an "abuse of discretion" and applying the arbitrary and capricious standard to review the finding), *aff'd sub nom. Isaac v. Sec'y of Health & Human Servs.*, 540 F. App'x 999 (Fed. Cir. 2013).

[6] Ms. Small was not entitled to the presumption of causation because the nerve injury described by her expert neurologist is not listed in the Vaccine Table as an injury caused by the flu vaccine. The musculoskeletal shoulder injury that Ms. Small's petition alleged as a "SIRVA" was added to the Vaccine Table after Ms. Small filed her petition, but additions to the vaccine table are not retroactive. 42 U.S.C. 300aa-14(c)(4) ("Any modification . . . of the Vaccine Injury Table shall apply only with respect to petitions for compensation under the Program which are filed after the effective date of such regulation"); Revisions to the Vaccine Injury Table, 82 FR 6294, 6303 (Jan. 19, 2017) (codified at 42 C.F.R. § 100.3) (adding SIRVA); Revisions to the Vaccine Injury

than not (by a "preponderance of the evidence") a substantial cause of her inability to raise her arm.

The Federal Circuit has listed three prongs that together constitute preponderant evidence that a vaccine caused an off-table injury. *Althen*, 418 F.3d at 1278. The special master correctly applied these three "*Althen* prongs," requiring Ms. Small to show "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." *Decision* at 21 (quoting *Althen*, 418 F.3d at 1278).

The special master accepted the medical theory proposed by Ms. Small's neurologist and held that she satisfied *Althen*'s first prong. The special master found, however, that Ms. Small failed to satisfy the second and third prongs with sufficient proof of the facts Ms. Small's first-prong medical theory required. The special master further considered whether Ms. Small could prove the facts to establish causation under a SIRVA-theory, but found that Ms. Small's pre-existing spinal condition excluded her symptoms from fitting within the definition of a SIRVA.

For an off-table injury claim, a petitioner's failure to satisfy any one of the three *Althen* prongs requires the special master to deny relief. Accordingly, the Court reviews the special master's holding that Ms. Small failed to satisfy prong two of the *Althen* test for preponderant evidence of vaccine causation. The special master found that there was "not preponderant evidence that [Ms. Small] experienced injection-related shoulder pain immediately following her vaccination or at any time prior to August 8, 2013." *Decision* at 23. As long as the special master (1) considered the record evidence relevant to whether Ms. Small experienced immediate pain after her flu shot and (2) rationally explained how this evidence and any plausible inferences the special master drew from it produced his ultimate finding, the Court is "compelled" to uphold the special master's decision. *Milik v. Sec'y of Health & Human Servs.*, 822 F.3d 1367, 1376 (Fed. Cir. 2016).

### A.     Immediate Pain of Direct Nerve Injury

The expert report of Ms. Small's neurologist, Dr. Szumski, offered the medical theory that a flu shot could immediately cause painful nerve damage to a vaccine recipient's arm, that such pain could cause disuse of the affected arm, and that such disuse over time could cause a limited range of motion in the affected arm. The special master accepted this direct-nerve-injury theory as persuasive and held that it satisfied the first *Althen* prong. *Decision* at 22.

*Althen* prong two requires "proof of a logical sequence of cause and effect, usually supported by facts derived from a petitioner's medical records." *Decision* at 22. Dr. Szumski's expert report suggested the following sequence of cause and effect to fit the theory of causation it used for prong one and to satisfy prong two: After her flu shot, Ms. Small suffered the

---

Table, Delay of Effective Date, 82 Fed. Reg. 11321 (Feb. 22, 2017) (delaying effective date of the final rule that added SIRVA until March 21, 2017).

immediate onset of pain from nerve damage. She disfavored her left arm to avoid the pain. This disuse of her left arm then gradually caused Ms. Small to develop a limited range of motion or "frozen shoulder." Dr. Szumski relied on a notation from Ms. Small's physical therapist suggesting that the provider suspected "frozen shoulder."

The special master held that Dr. Szumski's report failed to set forth a "logical sequence of cause and effect" based on two factual findings: (a) there was "not preponderant evidence that petitioner experienced injection-related shoulder pain immediately following her vaccination or at any time prior to August 8, 2013," and (b) Ms. Small's one report of immediate post-vaccination shoulder pain is "better explained by her [then-]ongoing and preexisting [spinal] condition." *Decision* at 23.

### 1. No Immediate Injection-Related Pain

The records of Ms. Small's three doctor visits over the six months following her flu shot include no mention of injection-related pain. From this absence of reported shoulder pain in Ms. Small's records, the special master inferred that Ms. Small did not immediately experience injection-related shoulder pain. He weighed this inference against claims in the affidavits of Ms. Small and her daughter and the opinion of Dr. Szumski that Ms. Small did experience pain immediately after the injection. Ultimately, the special master found that the lack of any report of vaccine-related pain in Ms. Small's medical records outweighed the affidavits and Dr. Szumski's opinion.

"It has generally been held that oral testimony which is in conflict with contemporaneous documents is entitled to little evidentiary weight." *Vergara v. Sec'y of Health & Human Servs.*, No. 08-882V, 2014 WL 2795491, at *4 (Fed. Cl. May 15, 2014) (citing *Murphy v. Sec'y, HHS*, 23 Cl. Ct. 726, 733 (1991), *aff'd without opinion*, 968 F.2d 1226 (Fed. Cir. 1992). While, "the absence of a reference to specific symptoms in a medical record does not conclusively establish the absence of symptoms during that time frame," *id.*, medical records deserve some presumption of accuracy and completeness because "proper treatment hang[s] in the balance."[7] *Cucuras v. Sec'y of Dep't of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

The inference that no immediate injection-related pain likely occurred based on the absence of reports of pain in Ms. Small's medical records was plausible, when viewing the record as a whole. The special master did not take the absence of symptoms in Ms. Small's records as conclusive, but rather looked to the kinds of visits recorded and the period of time over which they occurred in weighing the records' value against the expectation of immediate shoulder pain suggested by Ms. Small's affidavit and Dr. Szumski's report. *Decision* at 16.

---

[7] A similar theory of the inherent reliability of medical records and of statements made to medical providers undergirds the exception to the prohibition on hearsay evidence for statements made for medical diagnosis and treatment. *See* Fed. R. Evid. 803(4).

8

The inference was especially plausible considering that the doctor Ms. Small visited was effectively her primary-care physician. One of the visits dealt with a similar kind of symptom (neck pain) that might have required disclosure of arm pain for proper diagnosis and treatment. Indeed, it was during a visit to the same doctor—albeit ten months after the flu shot—that Ms. Small first reported injection-related symptoms.[8]

Moreover, the special master considered and rationally distinguished decisions from other special masters concluding that the timing of the onset of an injury can be proven even when records of the injury fall outside of the relevant onset period. *See Decision* at 18. He identified the length of Ms. Small's ten-month delay in reporting injection-related shoulder pain, her two general doctor visits in the six months after vaccination, and contemporaneous records suggesting that Ms. Small's symptoms are attributable to her pre-existing spinal condition as distinguishing facts. *Id.*

Indeed, the Court's review of the relevant special master decisions accepting long delays in the report of an immediate-onset injury confirms that Ms. Small's non-contemporaneous evidence like her eventual report of shoulder pain to her doctor and her daughter's affidavit were even more delayed and lacked the specificity of the non-contemporaneous evidence credited in other cases. *See, e.g., Forman-Franco v. Sec'y of Health & Human Servs.*, No. 15-1479V, 2018 WL 1835203 (Fed. Cl. Spec. Mstr. Feb. 21, 2018) (unpublished) (four-month delay, but with testimony of petitioner's office manager, who testified that he had to help petitioner remove her jacket the day after her vaccination); *Tenneson v. Sec'y of Health & Human Servs.*, 142 Fed. Cl. 329, 339 (2019) (four-month delay, but medical records "repeatedly and consistently" placed onset within 48 hours of the vaccination and overall pattern of treatment was consistent with other SIRVA claims); *Gurney v. Sec'y of Health & Human Servs.*, No. 17-481V, 2019 WL 2298790, at *5 (Fed. Cl. Mar. 19, 2019), *reconsideration denied*, No. 17-481V, 2019 WL

---

[8] In concluding that the special master's inference was plausible, the Court gives no weight to the portions of the doctor-visit records that the special master characterized as a "review of symptoms" or "musculoskeletal physical exam" that was "negative for myalgias and joint pain," reflected a "[n]ormal range of motion," and no swelling ("edema"). *Decision* at 8. A footnote in the special master's decision discloses that these "findings appear verbatim across a number of encounters even when they appear inconsistent with Dr. Elad's more detailed notations." The special master's footnote failed to note specifically that the record of the visit at which Ms. Small actually reported shoulder pain and the inability to raise her arm still includes the text "negative for myalgias and joint pain" and "[n]ormal range of motion" under the record's "Review of Systems" and "Physical Exam." (*See* Ex. 2 at 5, 7.) The first change to these checklist-like sections of Ms. Small's medical records does not appear until a late-2014 visit when the doctor notes a thyroid cyst. (*Id.* at 3, 7, 11, 15, 19, 49, 53, 57.) Nevertheless, considering the absence of shoulder pain in the substantive portions of the records, it was not unreasonable for the special master to consider these records as evidence that Ms. Small did not immediately experience shoulder pain from the flu shot.

2865490 (Fed. Cl. Apr. 24, 2019) (six-month delay, but with affidavit from doctor who remembered petitioner's immediate complaints of pain).

It was reasonable for the special master to give his medical-records-based inference more weight than the affidavits and Dr. Szumski's expert report. Ms. Small's affidavit claimed that she returned to Rite Aid "a few months after the vaccine" to complain about her shoulder pain. (Ex. 15 at 2.) The special master found this recollection inconsistent with the previously-discussed lack of any mention of shoulder pain in the records of Ms. Small's doctor visits in the months after the flu shot. *Decision* at 17. That Ms. Small sought primary care twice during that period, the special master concluded, contradicted Ms. Small's explanation for her delay in seeking care for the alleged injection-related pain. *Id.* Finally, the special master noted that Ms. Small's affidavit did not address how Ms. Small was affected by her spinal condition after her flu shot. *Id.*

The special master declined to credit the affidavit of Ms. Small's daughter claiming that she observed Ms. Small suffering from shoulder pain after the flu shot because the affidavit never specified a timeframe within the ten-month period before Ms. Small reported the symptoms to her doctor and did not address Ms. Small's pre-existing spinal condition. *Id.*

The special master considered Dr. Szumski's report inferring the onset of injection-related shoulder pain as the cause of Ms. Small's eventual inability to raise her arm—first treated by Dr. Szumski almost year after the flu shot. The special master offered multiple reasons why he considered Dr. Szumski's opinion "unpersuasive overall." *Decision* at 23. Dr. Szumki's opinion failed to address Ms. Small's preexisting spinal condition, which was noted in her medical records as the cause of her condition at and following the time of vaccination. *Id.* Dr. Szumski never actually observed or treated the direct-nerve injury that he believes led to Ms. Small's "frozen shoulder." *Id.* at 24. Moreover, a musculoskeletal injury like frozen shoulder is outside of Dr. Szumski's expertise as a neurologist. *Id.*

The special master considered that Dr. Szumski treated Ms. Small, but found the normal deference to the findings of treating physicians unwarranted because Dr. Szumski "'only saw the patient after the injury and based his opinion on the same evidence as relied upon by the retained experts.'" *Decision* at 23-24 (quoting *Nuttall v. Sec'y of Health & Human Servs.*, 122 Fed. Cl. 821, 832 (2015), *aff'd*, 640 Fed. Appx. 996 (Fed. Cir. 2016)).

The Court finds especially persuasive the special master's observation that neither Dr. Szumski's treatment records nor his later expert reports indicate that he considered or was even aware of Ms. Small's pre-vaccination spinal condition and reports of neck pain radiating into her upper extremities. *Decision* at 16. It was not error for the special master to reject an expert opinion that failed to address a pre-existing condition that—even from a lay review of Ms. Small's medical records—was a possible source of the symptoms Ms. Small attributes to the flu shot.

Without proof of a distinct injury following the shot, the special master found no logical sequence of events that demonstrated the petitioner's direct nerve injury theory of causation

10

under *Althen* prong two.[9] Having failed to meet the second of the *Althen* prongs, Ms. Small's claim failed at this stage.

### 2. Next-Day Pain Was Likely Caused by Spinal Condition

A list of "problems" in Ms. Small's physical-therapy evaluation performed the day after her flu shot lists "radicular" left-shoulder pain. The special master analyzed the meaning of "radicular" in the context of shoulder pain and concluded that it referred to the inflammation or impingement of nerve roots, possibly by a bony spur, a condition that could cause neck or shoulder pain. *Decision* at 16 n.21. The special master further noted that the respondent's expert report confirmed that Ms. Small's spinal condition could cause left-arm radicular pain. *Id.* The special master found that the "radicular" left-shoulder pain described in Ms. Small's next-day physical therapy evaluation was most likely caused by her pre-existing spinal condition, which was documented to have caused pain radiating into her arms. It was rational for the special master to consider the physical therapist's use of the term "radicular" as evidence that the left shoulder pain was caused by Ms. Small's pre-existing spinal condition and was not injection-related.

Although Ms. Small was seeking physical therapy for her spinal condition and nothing in the record indicates that the physical therapist knew of Ms. Small's recent flu shot, the physical therapist was on notice to consider alternate causes of Ms. Small's pain. The evaluation record shows that Ms. Small suggested a "strain" from lifting her husband as the cause of her pain, rather than her recently-diagnosed spinal condition or the flu shot. (Ex. 5 at 16.) Despite this suggestion from Ms. Small, the provider still characterized the shoulder pain as "radicular." This professional's contemporaneous use of the technical term "radicular" on a record presumably made primarily for reference by her and other professionals, even if recording the patient's self-report of symptoms, implicates the professional's judgment that a term like "radicular" applies to the pain the patient is describing. The physical therapist could have omitted "radicular" altogether or used a broader descriptor if she had doubts about the cause of Ms. Small's left shoulder pain. The special master's conclusion that Ms. Small's next-day left-shoulder pain was not evidence of a direct-nerve injury but was more likely caused by her spinal condition, was rational.

### B. SIRVA Criteria

The Court finds no error in the special master's conclusion that Ms. Small could not prove the musculoskeletal SIRVA injury she alleged in her petition as an alternative to her neurologist's theory of direct nerve injury. "SIRVA is a specific concept by which some musculoskeletal injuries temporally associated to vaccination are *deemed to have been vaccine caused* where they *meet certain criteria that rule out other causes.*" *Decision* at 22 (emphasis

---

[9] Without proof of a distinct injury, the special master could not judge whether the vaccination and injury were close enough in time to each other to infer a cause and effect relationship under *Althen*'s prong three.

added). The SIRVA concept has been used as a theory of causation in off-table claims under *Althen* prong one, based on the Secretary's rulemaking establishing SIRVA as a Table injury and the Secretary's history of conceding causation in prior, pre-Table SIRVA claims. *See, e.g., Tenneson v. Sec'y of Health & Human Servs.*, No. 16-1664V, 2018 WL 3083140, at *7 (Fed. Cl. Spec. Mstr. Mar. 30, 2018), *review denied,* 142 Fed. Cl. 329 (2019).

The Court agrees with the special master that Ms. Small's pre-existing spinal condition—documented to cause pain in her upper arms—is a "condition or abnormality [] present that would explain the vaccine recipient's symptoms." 42 C.F.R. § 100.3(10)(iv) (listing exclusions from the definition of a SIRVA). With the fact of Ms. Small's pre-existing spinal condition definitionally excluding her symptoms from fitting within the SIRVA-injury concept, Ms. Small could show no other facts under *Althen*'s second prong that would demonstrate a logical sequence of cause and effect consistent with a SIRVA theory of causation.

## IV. CONCLUSION

Failing to show the existence of either the direct nerve injury or SIRVA that she alleged that her flu shot caused, Ms. Small failed to prove that a vaccine caused her injury under *Althen*. The special master considered the evidence relevant to this finding and explained his reasons for crediting or discounting it. The special master's decision denying compensation was not arbitrary and capricious or contrary to law. The petitioner's motion for review is **DENIED**. The Clerk is directed to enter final judgment accordingly. Each side will bear its own costs.

It is so **ORDERED**.

Richard A. Hertling
Judge